# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10646

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2014

Lyle W. Cayce
Clerk

SERGIO CARDIEL,

Plaintiff - Appellant

v.

APACHE CORPORATION,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:12-CV-12

Before WIENER, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Sergio Cardiel appeals the district court's summary judgment in favor of Apache Corporation ("Apache") on Cardiel's claims of discrimination, as well as the district court's denial of Cardiel's motion to file supplemental briefing. We AFFIRM.

I.

Cardiel is a Hispanic male who began working for Apache in 1995. Apache has a Drug and Alcohol Policy (the "Policy"), which prohibits, among

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

other things, being under the influence of alcohol or illegal drugs while on duty, while on company premises, or while driving a company vehicle. The Policy also prohibits testing positive for illegal drugs or controlled substances without a prescription. The Policy permits Apache to discipline an employee, "up to and including termination, at the Company's sole discretion." The Policy was revised in August 2010 to permit random drug testing of Apache employees and contractors. If an employee or contractor initially tests positive on a random drug test, the Policy provides that they will not be allowed to return to work unless and until a licensed physician determines that the specimen submitted for testing is negative. Since the Policy was revised to include random drug testing, 905 random drug tests have been conducted on employees in the Apache region in which Cardiel was employed. Apache has consistently terminated all employees and permanently removed all contractors who have tested positive for drugs or alcohol in violation of the Policy.

In August 2011, the entirety of Cardiel's work group was selected for random drug testing. Cardiel's urine tested positive for propoxyphene, a prescription narcotic. A doctor reviewed the test results, confirmed the chain of custody, and called Cardiel to discuss the test. Cardiel admitted to the doctor that he took propoxyphene and that he did not have a prescription for it. Apache then terminated Cardiel, citing the failed drug test as the reason. Cardiel sued Apache, alleging that Apache impermissibly terminated him because of his race, age, and disability[1] in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"), respectively.

---

[1] In 2001, Cardiel was injured in a severe car accident that resulted in his inability to climb, kneel, or bend down.

No. 13-10646

Apache filed a motion for summary judgment, arguing that Cardiel could not establish a prima facie case of discrimination or rebut Apache's legitimate, non-discriminatory reason for terminating Cardiel. In response, Cardiel alleged that he was treated less favorably than similarly situated individuals who were outside of his protected classes, and that such disparate treatment allowed him to establish his prima facie case and demonstrate that Apache's reason for terminating him was pretextual.

Cardiel presented evidence that in 2000 or 2001, Apache employee Mike Payne was not terminated even though he confessed to Apache management that he consumed alcohol and drove an Apache vehicle during company hours. Cardiel also presented evidence that Apache employee Shirley Dodd was in an accident in an Apache vehicle, that prescription pill bottles were found at the scene of the accident, and that Dodd was not terminated. Cardiel presented no evidence regarding whether Dodd had a prescription for the pills. Conversely, Apache put forth uncontroverted evidence that it required Dodd to submit to drug testing on the day of the accident and that Dodd tested negative for controlled substances. Both Payne and Dodd were white, nondisabled, and younger at the time of their incidents than Cardiel was at the time of his termination.

After summary judgment briefing was complete, Cardiel filed a motion for leave to file supplemental briefing and evidence regarding Toney Dykes, a white, non-disabled, former Apache employee. The evidence showed that Dykes was arrested in April 2013 for driving while intoxicated. When Apache found out about the arrest, it gave Dykes the option of resigning or being terminated. He chose resignation. Cardiel also presented evidence that Dykes had previously been involved in an auto accident on Apache property while driving an Apache vehicle and that he probably was not required to submit to

3

drug testing at that time.  Apache did not initiate any disciplinary action against him at that time.

The district court granted summary judgment in favor of Apache, concluding that Cardiel had failed to put forth evidence showing that Apache intentionally discriminated against him.  The district court also denied Cardiel's motion to file supplemental briefing because the motion was untimely and because Dykes was not an appropriate comparator.  Cardiel timely appealed.

## II.

We review the district court's grant of summary judgment *de novo*, construing all facts and evidence in the light most favorable to the non-moving party.  *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court.  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

Because Cardiel offers only circumstantial evidence of discrimination, we analyze his claims pursuant to Title VII, the ADEA, and the ADA through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chevron Phillips*, 570 F.3d at 615 & n.6.  This analysis requires the plaintiff to establish a prima facie case of discrimination by demonstrating that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably, under nearly identical circumstances, than were other similarly situated employees who were not members of his protected

class (or, in the case of age discrimination, were younger).[2] *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009). If the plaintiff makes out a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. *Id.* If the employer satisfies its burden, the plaintiff then bears the ultimate burden of putting forth evidence that the employer's explanation is merely a pretext for intentional discrimination. *Id.*

The parties agree that Cardiel satisfied the first three prongs of his prima facie case. They dispute whether Cardiel has demonstrated that he was treated less favorably, under nearly identical circumstances, than similarly situated Apache employees who were not members of his protected class. As to this final prong of the prima facie case, we have held that employees are generally not similarly situated if they have different supervisors, different work responsibilities, work for different divisions of a company, committed dissimilar violations, or were the subject of adverse employment actions too remote in time from that taken against the plaintiff. *See id.* at 259–60. Furthermore, if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* at 260 (emphasis in original) (citation and internal quotation marks omitted). In short, an employee who proffers a fellow employee as a comparator must "demonstrate that the employment actions at issue were taken under nearly identical circumstances" for "nearly identical" conduct. *Id.* (citation and internal

---

[2] Other than the alleged "similarly situated employees," Cardiel offered no other evidence or theory to support his claims of discrimination, so we address only that evidence and do not address any other method of sustaining the prima facie burden under the fourth prong. *See, e.g., Fields v. J.C. Penney Co.*, 968 F.2d 533, 536 & n.2 (5th Cir. 1992).

quotation marks omitted). Cardiel is unable to establish a prima facie case because his proffered comparators do not meet these criteria.

As to Payne, we have no difficulty concluding, as did the district court, that the span of ten to eleven years between Payne and Cardiel's incidents is "too remote" on the facts of this case to allow the circumstances to be nearly identical. *Id.* at 259. This is particularly true given that the random drug-testing scheme under which Cardiel and every other employee who failed a random drug test was terminated was not even in place until at least nine years after Payne's incident. *Cf. Arceneaux v. Metro. Life Ins. Co.*, 481 F. App'x 196, 198–99 (5th Cir. 2012) (unpublished) (holding that circumstances were not nearly identical when there was a span of two to three years between the events and a change in supervisor occurred during that time).[3] In addition, the conduct in question was not nearly identical because Payne confessed to management that he had violated company policy, whereas Cardiel was caught by a random drug test.

Regarding Shirley Dodd, even assuming that all of Cardiel's evidence as to her is proper summary judgment evidence, it does not demonstrate conduct nearly identical to Cardiel's that would warrant disciplinary action. It shows only that Dodd had an accident in a company vehicle and that prescription pill bottles were found at the scene—neither of which violates Apache's Drug and Alcohol Policy. Importantly, Cardiel presents no evidence that Dodd actually took the drugs found at the scene (the only evidence was to the contrary); he also presents nothing to show she did not have a prescription for them.

Finally, the district court denied Cardiel leave to file supplemental briefing and evidence on Toney Dykes because the motion was untimely and

---

[3] Although *Arceneaux* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

the evidence did not show that Dykes violated company policy in a manner nearly identical to Cardiel.  Dykes's *arrest* for driving while intoxicated does not show that Dykes actually violated company policy or that Apache management had before it affirmative evidence that he violated company policy.[4]  This uncertainty as to whether Dykes actually violated company policy contrasts with Cardiel, as to whom Apache received negative drug test results and confirmation from a licensed physician that he violated Apache's Drug and Alcohol Policy.  This difference accounts for the different treatment by Apache and thus precludes Dykes from serving as a similarly situated comparator.[5]  *See Lee*, 574 F.3d at 260.  The district court did not abuse its discretion in denying Cardiel's motion to file supplemental briefing.[6]  *See Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440, 443–44 (5th Cir. 1990).

AFFIRMED.

---

[4] There is no evidence that Dykes was driving an Apache vehicle at the time of his arrest or that he was "on duty" as defined by Apache's Drug and Alcohol Policy.  There is also no evidence that he confessed to the crime or was convicted of it.  Simply being arrested for an alcohol offense does not appear to violate Apache's Drug and Alcohol Policy.  Notably, although Dykes was permitted to resign rather than being terminated, he was not permitted to remain an employee after the DWI arrest.

[5] In his reply brief, Cardiel essentially concedes that the evidence was insufficient to show that Dykes was similarly situated: "Without the opportunity to take Dykes' deposition, there is no way to know whether Dykes is an appropriate comparator. . . . Only after [further] information is obtained, could it be determined whether Dykes was an appropriate comparator to Cardiel."  Cardiel makes these statements in an apparent attempt to argue that the district court should have allowed him additional time to conduct discovery.  However, Cardiel did not request additional time to conduct discovery in the district court.

[6] Cardiel also sought to present evidence that Dykes was involved in an auto accident on Apache property a year prior.  The district court also did not abuse its discretion in refusing to consider this evidence because Cardiel did not show that failure to discover and present this evidence earlier was due to excusable negligent.  *See* FED. R. CIV. P. 6(b)(1)(B).